Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone: 516.741.4977
Facsimile: 516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID YOO,<br><br>Plaintiff,<br><br>vs.<br><br>CTI BIOPHARMA CORP., ADAM CRAIG, LAURENT FISCHER, DAVID PARKINSON, DIANE PARKS, MATTHEW D. PERRY, MICHAEL A. METZGER, and REED V. TUCKSON,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, David Yoo ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against CTI Biopharma Corp. ("CTI Biopharma" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Swedish Orphan Biovitrum AB ("Parent"),

through merger vehicle Cleopatra Acquisition Corp. ("Merger Sub" collectively with Parent, "Sobi") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a May 10, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of CTI Biopharma owned CTI Biopharma shareholders will receive $9.10 in cash. As a result of the consummation of the Proposed Transaction, CTI Biopharma will become an indirect wholly-owned subsidiary of Sobi.

3. Thereafter, on May 25, 2023, CTI Biopharma filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their CTI Biopharma shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary

to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for CTI Biopharma, provided by CTI Biopharma to the Company's financial advisors Centerview Partners LLC ("Centerview") and MTS Health Partners ("MTS"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Centerview and/or MTS and provided to the Company and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of California and, at all times relevant hereto, has been a CTI Biopharma stockholder.

8. Defendant CTI Biopharma is a biopharmaceutical company, focuses on the acquisition, development, and commercialization of novel targeted therapies for blood-related cancers in the United States. CTI Biopharma is incorporated under the laws of the State of Delaware and has its principal place of business at 3101 Western Avenue, Suite 800, Seattle, WA 98121. Shares of CTI Biopharma common stock are traded on the Nasdaq Stock Exchange under the symbol "CTIC".

9. Defendant Adam R. Craig ("Craig") has been a Director of the Company at all relevant times and serves as the Chief Executive Officer ("CEO") and Interim Chief Medical Officer of the Company.

10. Defendant Laurent Fischer ("Fischer") has been a Director of the Company at all relevant times and serves as the Chairman of the Company Board.

11. Defendant David Parkinson ("Parkinson") has been a director of the Company at all relevant times.

12. Defendant Diane Parks ("Parks") has been a director of the Company at all relevant times.

13. Defendant Matthew D. Perry ("Perry") has been a director of the Company at all relevant times.

14. Defendant Michael A. Metzger ("Metzger") has been a director of the Company at all relevant times.

15. Defendant Reed V. Tuckson ("Tuckson") has been a director of the Company at all relevant times.

16. Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

17. Non-Party Parent is an international biopharmaceutical company dedicated to treatments in the areas of haematology, immunology and specialty care. Parent is based in Sweden, with headquarters in Stockholm.

18. Non-Party Merger Sub is an affiliate of Parent created to effectuate the proposed transaction.

**JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act. This action is not a collusive

one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

22. CTI Biopharma is a biopharmaceutical company, focuses on the acquisition, development, and commercialization of novel targeted therapies for blood-related cancers in the United States.

23. The Company offers VONJO (pacritinib), an oral kinase inhibitor with specificity for JAK2, FLT3, IRAK1, and CSF1R for the treatment of adult patients with myelofibrosis.

24. CTI BioPharma Corp. has license and collaboration agreement with Teva Pharmaceutical Industries Ltd. and S*BIO Pte Ltd.

25. The Company's most recent clinical performance press release, revealing results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and

solid operational performance. For example, in the March 6, 2023 press release announcing its 2022 Q4 and FY Financials, the Company highlighted such positive FDA approval of the Company's flagship drug VONJO (pacritinib) for treatment of adults with intermediate or high-risk primary or secondary (post-polycythemia vera or post-essential thrombocythemia) myelofibrosis with a platelet count below $50 \times 10^9$/L.

26. Additionally, the Company reported $54 million in net sales in the first nine months since the VONJO launch in 2022.

27. Speaking on these positive results, Company CEO and defendant Craig stated as follows, "CTI is now established as a market leader in the treatment of cytopenic myelofibrosis following the accelerated approval and U.S. commercial launch of VONJO® (pacritinib) over the past year." Craig continued, "With the launch of VONJO in March 2022, we exceeded our year-end revenue goal by achieving $54 million in net sales in 2022 with strong quarter-over-quarter growth.

28. Craig also went on to espouse his views for the Company's bright potential future, noting that, "We look forward to continuing activities focused on market expansion in 2023, which are intended to drive quarter-over-quarter net sales increases."

29. These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by CTI Biopharma. Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

30. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused CTI Biopharma to enter into the Proposed Transaction without providing requisite information to CTI Biopharma stockholders such as Plaintiff.

***The Flawed Sales Process***

31. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible. Moreover, the Recommendation is materially deficient in the information it fails to provide.

32. The Recommendation Statement fails to adequately disclose the identity of the Board members who sat on the "Transaction Committee", or the extent of the powers of the Transaction Committee in evaluating the Proposed Transaction, including whether the Transaction Committee was empowered to veto a potential transaction not in the best interest of common shareholders.

33. In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Sobi, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

34. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Sobi, throughout the sales process, if any, would fall away.

35. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

36. On May 10, 2023, CTIC Biopharma issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **SEATTLE, May 10, 2023 /PRNewswire/** — CTI BioPharma (Nasdaq: CTIC) ("CTI"), a commercial biopharmaceutical company focused on the development and commercialization of novel targeted therapies for blood-related cancers, today announced that it has entered into a definitive agreement under which Swedish Orphan Biovitrum AB (STO: SOBI) ("Sobi"), a global healthcare leader in hematology, immunology and specialty care, will acquire CTI for $9.10 per share of common stock in an all-cash transaction, representing an implied equity value of approximately $1.7 billion.
>
> The transaction will diversify Sobi's portfolio of leading hematology medicines through CTI's lead product, VONJO® (pacritinib), which is FDA-approved for the treatment of adult myelofibrosis patients with a platelet count below 50 x109/L. Bringing together Sobi and CTI is expected to enhance Sobi's commercial footprint in the U.S., and CTI will benefit from Sobi's resources, scale and strong international presence as it continues to grow and explore new indications and development opportunities for VONJO. Following the completion of the transaction, CTI will become a wholly owned subsidiary of Sobi. Together, Sobi and CTI expect to advance their shared mission to change the treatment paradigm for underserved patient communities suffering from rare diseases through new, innovative and effective medicines and therapies.
>
> "We are delighted to announce this transaction, which delivers a compelling all-cash premium to our shareholders, while positioning CTI to unlock the full potential of VONJO in treating myeloproliferative disease," said Adam Craig, M.D., Ph.D., M.B.A., President, Chief Executive Officer and Interim Chief Medical Officer of CTI BioPharma. "In Sobi, we've found a global partner whose mission, culture and strategic business priorities are aligned with ours, and by joining forces, we have access to additional financial and development resources to drive and enhance the growth of VONJO. As we enter CTI's next chapter with the support of Sobi, we'd like to recognize the extraordinary work of our talented employees, who will play a key role in the success of the combined company."
>
> **Transaction Details and Closing**
>
> The transaction price represents an 89% premium to CTI's closing share price on May 9, 2023, as well as a 95% premium to its 30 trading day volume-weighted average price of $4.67. The transaction, which was unanimously approved by CTI's Board of Directors, is expected to close in the third quarter of 2023.

> Under the terms of the merger agreement, Sobi, through a wholly owned, indirect subsidiary, will commence a tender offer to acquire all outstanding shares of CTI for $9.10 per share of common stock in cash. Sobi has received an irrevocable undertaking from certain entities affiliated with BVF Partners L.P. (BVF) to tender all of their shares of common stock, representing 6.7% of all outstanding shares of CTI common stock.
>
> The closing of the tender offer will be subject to certain conditions, including the tender of shares in the tender offer representing at least a majority of the total number of CTI's shares of common stock outstanding and the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Upon the successful completion of the tender offer, Sobi's acquisition subsidiary will be merged into CTI, and any remaining shares of common stock of CTI will be cancelled and converted into the right to receive the same $9.10 per share in cash.
>
> **First Quarter 2023 Earnings Results**
>
> Given the transaction announcement, CTI does not intend to issue an earnings release for its first quarter 2023 financial results and will not host an earnings conference call.
>
> **Advisors**
>
> Centerview Partners LLC and MTS Health Partners are serving as CTI's financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP and Gibson, Dunn & Crutcher, LLP are serving as legal counsel.

***Potential Conflicts of Interest***

37. The breakdown of the benefits of the deal indicates that CTI Biopharma insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of CTI Biopharma.

38. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name of Officer or Director | Number of Shares Owned | Cash Consideration Payable in Respect of Shares ($) |
|---|---|---|
| Adam R. Craig, M.D., Ph.D. | 29,440 | 267,904 |
| David H. Kirske | 17,127 | 155,856 |
| James K. Fong | 3,565 | 32,442 |
| Laurent Fischer, M.D. | — | — |
| Michael A. Metzger | — | — |
| David Parkinson, M.D. | — | — |
| Diane Parks | — | — |
| Matthew D. Perry[(1)] | 43,139 | 392,565 |
| Reed V. Tuckson, M.D., F.A.C.P. | 48,639 | 442,615 |

39. In addition, Company insiders, currently own large, illiquid portions of stock options, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name of Officer or Director | Number of Shares Subject to Vested Company Options (#) | Weighted Average Exercise Price per Share (Vested Company Options) ($) | Cash Consideration for Vested Company Options ($) | Number of Shares Subject to Unvested Company Options (#) | Weighted Average Exercise Price per Share (Unvested Company Options) ($) | Cash Consideration for Unvested Company Options ($) | Total Cash Consideration for Company Options in Merger ($) |
|---|---|---|---|---|---|---|---|
| Adam R. Craig, M.D., Ph.D. | 6,420,056 | 2.46 | 42,660,356 | 1,909,998 | 4.35 | 9,068,423 | 51,728,779 |
| David H. Kirske | 1,210,280 | 2.25 | 8,291,709 | 453,332 | 4.34 | 2,157,193 | 10,448,902 |
| James K. Fong | 633,638 | 2.09 | 4,441,793 | 395,832 | 3.83 | 2,085,201 | 6,526,994 |
| Laurent Fischer, M.D. | 516,000 | 2.51 | 3,398,368 | 80,000 | 4.08 | 401,600 | 3,799,968 |
| Michael A. Metzger | 333,000 | 3.53 | 1,855,000 | 80,000 | 4.08 | 401,600 | 2,256,600 |
| David Parkinson, M.D. | 516,000 | 2.58 | 3,365,368 | 80,000 | 4.08 | 401,600 | 3,766,968 |
| Diane Parks | 146,667 | 3.69 | 792,802 | 133,333 | 3.54 | 740,798 | 1,533,600 |
| Matthew D. Perry[(1)] | 390,000 | 3.11 | 2,335,768 | 80,000 | 4.08 | 401,600 | 2,737,368 |
| Reed V. Tuckson, M.D., F.A.C.P. | 536,000 | 3.07 | 3,232,080 | 80,000 | 4.08 | 401,600 | 3,633,680 |

40. In addition, certain employment agreements with certain CTI Biopharma executives, entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination. These 'golden parachute' packages are significant and will grant each director or officer entitled to them significant sums of money, compensation not shared by Plaintiff, as follows:

| Name* | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Adam R. Craig, M.D., Ph.D. | $1,917,296 | $9,068,423 | $62,327 | $11,048,046 |
| David H. Kirske | $594,556 | $2,157,193 | $28,237 | $2,779,986 |
| James K. Fong | $693,000 | $2,085,201 | $43,010 | $2,821,211 |

41. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. Thus, while the Proposed Transaction is not in the best interests of CTI Biopharma, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

43. On May 25, 2023, the CTI Biopharma Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44. Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

a. Adequate disclosure of the membership of the Transaction Committee;

b. Adequate disclosure of the extent of powers of the Transaction Committee in evaluating the Proposed Transaction, including whether the Transaction Committee was empowered to veto a potential transaction not in the best interest of common shareholders;

c. Whether the terms of any confidentiality agreements entered during the sales process between CTI Biopharma on the one hand, and any other third party (including Sobi), if any, on the other hand, differed from one another, and if so, in what way;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Sobi) throughout the sales process, if any, would fall away; and

e. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning CTI Biopharma Financial Projections*

45. The Recommendation Statement fails to provide material information concerning financial projections for CTI Biopharma provided by CTI Biopharma management and relied upon by Centerview in its analyses.

46. Notably, in its fairness opinion, Centerview notes that it reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of CTI, including certain financial forecasts, analyses and projections relating to CTI prepared by management of CTI and furnished to Centerview by CTI for purposes of Centerview's analysis, which are referred to in this summary of Centerview's opinion as the "*Forecasts*," and which are collectively referred to in this summary of Centerview's opinion as the "*Internal Data*.""

47. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that CTI Biopharma management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

48. With regard to the *Management Projections* prepared by CTI Biopharma, the Recommendation Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to tender his shares in favor of the

Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

51. In the Recommendation Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Selected Public Company Analysis*, the Recommendation Statement fails to disclose:

a. The specific inputs, metrics, and assumptions used to determine the utilized reference range of EV/2026E Revenue Trading Multiples of 1.5x to 2.5x; and

b. The number of fully-diluted outstanding Company Shares utilized.

53. With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose:

a. The specific date each Selected Precedent Transaction closed;

b. The aggregate value of each Selected Precedent Transaction;

c. The specific inputs, metrics, and assumptions used to determine the utilized reference range of EV / 4-Year Forward Revenue Multiples of 3.0x to 5.0x; and

d. The number of fully-diluted outstanding Company Shares utilized

54. With respect to the *Discounted Cash Flow Analysis*, the Recommendations Statement fails to disclose:

a. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 12.5% to 14.0%;

b. CTI Biopharma's weighted average cost of capital utilized;

c. The range of implied terminal values for the Company calculated;

d. The specific inputs and assumptions used to determine that the Company's unlevered free cash flows would decline in perpetuity after December 31, 2034 at a rate of free cash flow decline of 75% year over year; and

e. CTI's fully diluted outstanding Shares.

55. With respect to the *Analyst Price Target Analysis*, the Recommendations Statement fails to disclose:

a. The specific price targets utilized; and

b. The identity of the firms that generated such price targets.

56. With respect to the *Precedent Premiums Paid Analysis*, the Recommendations Statement fails to disclose:

a. The specific premia paid utilized; and

b. The specific inputs, metrics, and assumptions used to determine the utilized 60% to 100% premia rate utilized.

57. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

58. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

**FIRST COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

61. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

62. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

65. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

66. Plaintiff has no adequate remedy at law.

**SECOND COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against all Defendants)**

67. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

68. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

69. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

70. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

71. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

72. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender

his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

73. Plaintiff has no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

74. Plaintiff repeats all previous allegations as if set forth in full herein.

75. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

76. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

77. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of CTI Biopharma's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

78. The Individual Defendants acted as controlling persons of CTI Biopharma within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause CTI Biopharma to engage in the wrongful conduct complained of herein. The Individual Defendants controlled CTI Biopharma and all of its employees. As alleged above, CTI Biopharma is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of

material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 30, 2023

**BRODSKY & SMITH**

By: ______________________

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*